[No. 6869.   Decided December 13, 1907.]

DAVID M. HOFFMAN, *Respondent*, v. AARON R. TITLOW *et al.*,
                          *Appellants.*[1]

VENDOR AND PURCHASER—REMEDIES OF VENDEE—RECOVERY OF PAY-
MENT—DEFENSES—TITLE—ADVERSE POSSESSION.   A contract for the
purchase of real estate calling for an abstract showing perfect title
may be rescinded by the vendee and payment made recovered, where
the abstract shows that a strip of the lot and a wall thereon had
been conveyed to the adjoining owner, who asserted title thereto;
and the fact that the adjoining owner had never used the same, and
had paid no taxes, and that the vendors had been in adverse posses-
sion for the statutory period, is immaterial; since the purchaser
may demand a title free from hostile claims and litigation.

SAME—EVIDENCE—CORROBORATION—ADMISSIBILITY.   In an action
to recover purchase money paid by a vendee, after his rescission of
a sale for defect in the title, evidence in corroboration of the de-
fendant's statement that they offered to cure the defect sometime be-
tween the 22d and 25th of May, two years prior to the trial, is in-
admissible when the witness cannot fix the time of the corroborative
circumstance except to state that it was "a couple of years ago,
somewhere about that time.   I think they were figuring on the sale
of the property."

Appeal from a judgment of the superior court for Pierce
county, Yakey, J., entered March 16, 1907, upon the verdict
of a jury rendered in favor of the plaintiff, in an action to
recover purchase money paid on a contract for the sale of
real property.   Affirmed.

*A. R. Titlow* and *Ellis & Fletcher*, for appellants.

*Hudson & Holt*, for respondent.

MOUNT, J.—The parties to this action entered into the fol-
lowing agreement:

                    "Receipt for Earnest Money.
                         "Tacoma, Wash., May 16, 1905.
    "Received from D. M. Hoffman the sum of five hundred
dollars as earnest money and part payment for the following

    [1]Reported in 92 Pac. 888.

described premises, situate in the county of Pierce, state of Washington, to wit:

"Lot 10 in block 1203, New Tacoma, this day sold to D. M. Hoffman for the sum of $25,955, the balance of $25,-455 to be paid as follows: $4,000 by conveyance to A. R. Titlow and H. H. Gove of lots 9 to 12 inc. Blk. 3514, New Tacoma, by warranty deed free and clear of encumbrances and the assumption of the mortgage by said Hoffman aggregating $10,000. Vendor to pay interest on said mortgages to the date of the transfer of said premises and $11,455 in gold coin, and upon full payment as stated above the vendor agrees to deliver a warranty deed, conveying good title free from all incumbrances, except as above, as shown by a complete abstract of title, certified by a responsible abstractor, to be furnished by vendor on or before May 18, 1905, and to be examined by the said purchaser within five days thereafter. If said abstract does not show such title or cannot be made to do so within ten days from notice of defects, then this agreement to be void, and all payments hereunder shall be refunded. Otherwise, if the said purchaser refuse to complete the purchase in accordance with the terms hereof, all payment made shall be forfeited as a commission and compensation for examining property, abstract and papers, but such forfeiture shall not impair the right of either party to pursue the usual remedies for breach of this contract. Said Hoffman to furnish a complete abstract of title to lots 9 and 12 inc. Block 3514.                    H. H. Gove, A. R. Titlow.

"I agree to purchase the said above described premises upon the terms herein set forth.    D. M. Hoffman, Purchaser."

At the time this agreement was entered into, the respondent paid to the appellants the $500 therein mentioned, and a few days later abstracts of title were furnished by each party to the other. Thereupon the respondent was advised by his attorney, who examined the abstract of title of lot 10, block 1203, New Tacoma, that the title was defective, for the reason that a strip thereof upon which was erected a brick wall had been conveyed to, and was then owned by, the National Bank of Commerce of Tacoma. Respondent thereupon notified ap-

6—48 WASH.

pellants of this defect of title, and requested them to make the title clear.

It appears that while this strip of land and the wall thereon had been conveyed to the bank in the year 1882 or 1883, the bank had not used the wall, but had subsequently erected a large building on their own lot adjoining, without using the wall or occupying any part of lot 10 of block 1203. Appellants insisted that the conveyance to the bank was not an incumbrance but was a benefit, and that the bank had no intention of ever using the strip or the wall thereon, had never paid any taxes thereon, and had abandoned the same. Respondent, however, insisted that the appellants should obtain an acquittance from the bank which, it is alleged, appellants failed and refused to do, and appellants thereupon rescinded the contract by notifying respondent that the sale was off and the $500 was forfeited. Respondent thereupon brought this action to recover back the $500 paid on the contract. Appellants by their answer denied that they had rescinded the contract or refused to comply with the terms thereof, and alleged affirmatively that they were able, ready, and willing at all times to comply with the terms of the contract, and within time offered to convey to plaintiff a clear title to said lot 10 of block 1203, free from all liens, incumbrances, easements, or threatened clouds; that plaintiff refused to accept the same, and that defendants were thereby damaged in the sum of $1,000. Upon these issues being tried to the court and a jury, a verdict was returned in favor of the plaintiff for $500 and interest. The defendants appeal from a judgment entered thereon.

There was but one substantial issue of fact at the trial, and that issue was clearly defined by the pleadings, viz., did the appellants rescind the contract by declaring the sale off without tendering or offering the title free from incumbrances? The evidence upon this question was about evenly balanced so far as the record before us discloses, and was therefore strictly a question for the jury, and the findings of the jury upon it are conclusive.

It is contended by appellants, however, that the court erred in excluding evidence offered by the appellants, to the effect that the National Bank of Commerce had not occupied the part of lot 10 deeded to it in 1882, and had made no claim thereto since 1892, but that defendants and their predecessors had been in actual, open and notorious possession of the whole of the lot for more than ten years, and had paid the taxes thereon. If it were conceded that the title standing in the bank did not, under these circumstances, constitute a cloud upon the title, nevertheless this evidence was not material because the bank at that time was claiming title and demanding a substantial sum for its interest in the lot. This fact is clearly shown and, in fact, is apparently conceded. The admitted contract stated that the vendor agreed to convey a good title, free from all incumbrances except certain stated incumbrances. The purchaser under this contract was entitled to demand a title free from hostile claims and possible litigation. *Miller v. Philips & Co.*, 44 Wash. 226, 87 Pac. 264; 28 Am. & Eng. Ency. Law (2d ed.), p. 111, and cases cited. It was not error to exclude the evidence under the state of facts shown. Nor was it error to refuse to instruct the jury, based upon the alleged abandonment by the bank or of adverse possession by the appellants, because the facts did not warrant submitting that issue to the jury. What we have said upon this question disposes of all the assignments of error based upon the instructions.

Appellants further contend that the court erred in excluding the testimony of Mr. Albertson, an officer of the bank, to the effect that he promised the appellants, between the 25th and the 26th day of May, 1905, to convey or release all the bank's interest in the lot to the appellants. It is argued by the appellants that this evidence was admissible, because it amounted to an act of the appellants and corroborated their evidence to the effect that they offered to procure a deed from the bank, and told the respondent that they had made arrange-

ments therefor. Conceding, for the purposes of this case, that this was such an act of the appellants as might be proved in corroboration of their statements, the offer was not made until after Mr. Albertson had testified that he had a conversation with appellants in the year 1905 (which was about two years prior to the trial) in reference to the claim of the bank to the portion of the lot in question. He was then asked, "Was that between the 22d and 25th days of May 1905—along about there?" He answered: "It was a couple of years ago. I couldn't give the exact date. It was somewhere about that time. I think they were figuring on the sale of the property." The issue in the case was whether the appellants, at a meeting, or rather several meetings, which occurred between the 22d and the 25th days of May, 1905, rescinded the contract by declaring the sale off. The respondent's evidence is to the effect that appellants voluntarily declared the sale off, while appellants' evidence is to the effect that they not only did not do so, but offered to obtain a release from the bank. It was conceded that appellants afterwards purchased the interest or claim of the bank to the lot.

If the evidence offered was admissible at all, it was only so because it amounted to an *act* of the appellants to comply with the respondent's demand for a good title. It was necessary then to show that this act or conversation preceded the time when the offer to convey was made. Otherwise it was clearly inadmissible, because what was said or done afterwards between appellants and third parties had no bearing whatever upon the case. We are of the opinion that the statements of the witness as to the time he had the conversation were not sufficiently definite to make the evidence admissible as corroborative evidence, or to make its exclusion reversible error.

We find no error in the record, and the judgment must therefore be affirmed.

HADLEY, C. J., DUNBAR, ROOT, and CROW, JJ., concur.